UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 08-156 (JNE / SRN) |
| **Plaintiff,** | |
| v. | **REPORT AND RECOMMENDATION** |
| Michael Lavaughn Balance (1), James Edwin Nielsen, Jr. (2), and Jordan Mark O'Brien (3), | |
| **Defendants.** | |

Andrew R. Winter, Assistant U.S. Attorney, 600 U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for U.S.A.

F. Clayton Tyler, F. Clayton Tyler, P.A., 331 Second Avenue South, Suite 230, Minneapolis, MN 55401, for Defendant Balance.

Daniel L. Gerdts, Brink & Gerdts, P.A., 331 Second Avenue South, Suite 110, Minneapolis, MN 55401, for Defendant Nielsen.

Peter B. Wold, Peter B. Wold, P.A., 247 Third Avenue South, Minneapolis, MN 55415, for Defendant O'Brien.

SUSAN RICHARD NELSON, United States Magistrate Judge

This matter comes before the undersigned United States Magistrate Judge on Defendants' various dispositive motions: Nielsen's Motion to Suppress Statements (Doc. No. 34), Nielsen's Motion to Suppress Evidence Obtained as a Result of Illegal Searches (Doc. No. 35), Nielsen's Motion to Suppress Any Identifications (Doc. No. 36), Balance's Motions For Severance of Counts and Defendants (Doc. Nos. 48 & 71), Balance's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 49), Balance's Motion to Suppress Confessions and Statements in the Nature of Confessions (Doc. No. 70), O'Brien's Motion to Suppress Search and Seizure of Evidence (Doc. No. 65), O'Brien's Motion to Suppress Confession or Statements

in the Nature of Confessions (Doc. No. 66), and O'Brien's Motion to Compel Government To Demonstrate An Independent, Legitimate Source For Evidence Used Against Defendant (Doc. No. 67). The matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1(a). For the reasons stated below, this Court recommends that the motions addressed in this Report and Recommendation be denied.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

Defendants have been indicted variously for drug, money laundering and firearms offenses. (Doc. No. 10.) They now present numerous dispositive and non-dispositive motions.[1]

II.    **DISCUSSION**

    A.    **Severance Of Counts And Defendants**

Defendant Balance moves for severance both of the various counts alleged against him and of the other Defendants. (Doc. Nos. 48 & 71.)[2] With respect to severance of the other Defendants, Balance generally contends that the Defendants are not properly joined under Rule 8(b), that the jury will be unable to distinguish between the alleged actions of the various Defendants and that each Defendant might introduce evidence that would be inadmissible against the others. (Doc. No. 48.) With respect to severance of the various counts, Balance generally contends that the counts are not properly joined under Rule 8(a), that his Fifth Amendment rights will be jeopardized by joinder, that joinder will permit the introduction of evidence admissible with respect to one count but not the others, and that the jury will face the

---

[1] The Court has addressed Defendants' non-dispositive motions in an Order dated September 15, 2008, and has addressed O'Brien's dispositive motion regarding immunity (Doc. No. 67) in a separate Report and Recommendation.

[2] The two motions are identical and the second appears to have been inadvertently filed.

same problem distinguishing between counts as it would distinguishing between the acts of various Defendants. (Id.) Balance has filed no supporting memorandum, however, providing any detailed explanation of these general arguments.

The Government opposes severance, arguing that "[t]he Supreme Court has repeatedly reminded federal courts that '[t]here is a preference in the federal system for joint trials of defendants who are indicted together.'" (Doc. No. 73 (quoting <u>Zafiro v. United States</u>, 506 U.S. 534, 536 (1993)).) Severance is appropriate "only if there is a 'serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" (Id.)

With respect to joinder of multiple defendants, an indictment may charge two or more defendants "if they are alleged to have participated in the same act or transactions, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). Here, the Indictment alleges Balance and Nielsen were engaged in a conspiracy to distribute marijuana, that all three Defendants were laundering the proceeds from that operation, and that Balance possessed a firearm both in furtherance of a drug trafficking crime and despite having a prior felony conviction. (Doc. No. 10.) Absent any specific showing of how a joint trial of all Defendants on these related charges would prejudice Balance (or the other Defendants), there is no basis to sever.

With respect to joinder of the counts, an indictment may charge a defendant in separate counts with two or more offenses if they "are of the same or similar character, or . . . are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). "'[W]here the offenses are similar in character and occurred over a relatively short period of time and the evidence overlaps, joinder is ordinarily appropriate.'" <u>United States v. Tyndall</u>, 263 F.3d

3

848, 849 (8th Cir. 2001) (quoting United States v. McClintic, 570 F.2d 685, 689 (8th Cir. 1978)).

Here, the drug, weapons and money laundering charges all pertain to the same common scheme or plan: the Government alleges Balance engaged in drug trafficking, possessed firearms to protect that operation and laundered the proceeds from that operation. Accordingly, the offenses should be tried together. No showing has been made of any likely resulting prejudice. See Fed. R. Crim. P. 14(a) (providing for severance if joinder "appears to prejudice a defendant"). The motions to sever should be denied.

### B. Statements Of Defendants

Each Defendant moves to suppress any statements they made. (Doc. Nos. 34, 66 & 70.)[3] The Government responds that there were no such statements by Balance and Nielsen. (Doc. No. 73, at 2.) Accordingly, those motions (Doc. Nos. 34 & 70) are denied as moot.

With respect to O'Brien, he moves to suppress any statements he made, particularly those made on January 9, 2007, as the product of a direct or implied promise of immunity and as having been made without first waiving his Miranda rights. (Doc. No. 66.)[4] The Government argues that his January 9 statements during an interview with IRS Special Agent John Tschida at the office of O'Brien's attorney were voluntary. (Doc. No. 89, at 13.)

O'Brien's post-hearing memoranda appears to pursue only the argument that his statements should be suppressed as the product of coercion resulting from the alleged offer of immunity (which he claims is separate from his motion to dismiss based on Kastigar) and does

---

[3] Balance had also moved for discovery and disclosure of any such statements. (Doc. No. 44.) This Court addressed that non-dispositive motion in its Order dated September 15, 2008.

[4] The Government claims that O'Brien's statement of January 23, 2007, given under the immunity agreement is moot as it "does not intend to offer this particular statement at trial." (Doc. No. 73.) This leaves at issue only the statements O'Brien gave earlier on January 9, 2007.

4

not appear to press the custodial interrogation argument based on Miranda.  (Doc. No. 83.)[5]  O'Brien argues that "[t]his is a unique confession" not governed by the issue of custodial interrogation under Miranda.  (Id.)  Rather, he contends that his statement was not voluntary because he "never would have spoken with the government had it not been for a promise made" by Special Agent Tschida that if O'Brien confessed, "his actions would be overlooked."  (Id.)  Accordingly, he claims that this "ultimate inducement" violates the Fifth Amendment.  (Id.)

In Bram v. United States, 168 U.S. 532 (1897), the Supreme Court "declared that a confession 'obtained by any direct or implied promises, however slight,' is not voluntary.  Read literally, this passage suggests a standard holding automatically involuntary any confession that was a 'but for' product of a promise that might benefit the defendant." 2 Wayne R. LaFave, et al., Criminal Procedure § 6.2(c), at 621 (3d ed. 2007).  But in Arizona v. Fulminante, 499 U.S. 279 (1991), the Court noted that any such reading of Gram is not consistent with the "'standard for determining the voluntariness of a confession'" under current precedent.  2 LaFave, et al., supra, § 6.2(c), at 621.  Accord Tippitt v. Lockhart, 859 F.2d 595, 596-97 (8th Cir. 1988) (explaining that Bram "has never been applied with the wooden literalness urged" by defendant and that Bram "should not be interpreted to require the exclusion of a statement given in exchange for a promise not to prosecute for an additional crime").

Rather, a statement "is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendants' will and critically impair his capacity for self-determination." Simmons v. Bowersox, 235 F.3d 1124, 1132 (8th Cir. 2001).  Voluntariness is measured according to the "totality of the circumstances surrounding the

---

[5] O'Brien's Kastigar motion (Doc. No. 67) is addressed in a separate Report and Recommendation.

interrogation, including law enforcement officials' conduct and the defendant's capacity to resist any pressure," with specific consideration of "factors such as detention length, the repetitive and prolonged nature of questioning, and the accused's age." Id. at 1132-33.

O'Brien relies on United States v. LeBrun, 363 F.3d 715 (8th Cir. 2004) (en banc) (7-4), in support of his argument that a "'statement is involuntary when it was extracted by'" such tactics as "'express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination.'" (Doc. No. 83.) But in LeBrun, the Eighth Circuit ruled that a criminal defendant's "confession was not compelled because a defendant's mistaken *belief* that he could not be prosecuted does not render a confession involuntary." 363 F.3d 715, 725 (8th Cir. 2004) (emphasis in original). The court clarified that the governing test–which it characterized as "a very demanding standard"–is "whether the facts surrounding [the] interview demonstrate that the authorities overbore [the defendant's] will and capacity for self-determination." Id. at 726. Relying substantially on several factors (the speed with which Defendant confessed, that he had a subjective understanding of his Miranda rights and that he was a "sophisticated individual with legal training"), the court concluded the confession was not involuntary. Id. at 726-27.

Here, in contrast, O'Brien argues simply that the agent's alleged promise of non-prosecution alone warrants suppression on these facts. The parties dispute whether IRS Special Agent John Tschida in fact offered O'Brien actual immunity at the January 9, 2007, meeting or whether he merely informed O'Brien that the Government was considering him only as a witness, rather than a target, at that time and that the Government would probably maintain that posture if O'Brien was truthful.

But this Court need not address here whether any such promise of immunity was in fact

6

made because the Eighth Circuit has ruled that "[v]arious courts have held that government agents may promise to make a defendant's cooperation known to the prosecutor and may even be able to make and breach certain promises without rendering a resulting confession involuntary." Tippitt v. Lockhart, 859 F.2d 595, 597 (8th Cir. 1988). Thus, absent any other indicia of coercion, the Court cannot conclude that the statements were involuntary even if Tschida had in fact offered O'Brien immunity.[6] Accordingly, the motion to suppress the January 9 statements should be denied.

### C. Evidence Obtained As A Result Of Searches And Seizures

All three Defendants move to suppress evidence obtained as a result of allegedly illegal searches and seizures. (Doc. Nos. 35, 49 & 65.) Only Nielsen, however, has filed a post-hearing memorandum in support. (Doc. No. 79.)[7] Four warrants were executed: (1) a December 2006 warrant (supported by the affidavit of Burnsville Police Officer Patrick Gast) to search a Burnsville, Minnesota, residence occupied by Balance, but purchased by O'Brien (as well as several vehicles and several persons, including Balance and O'Brien); and (2) three November 2007 warrants (each of which was supported by the affidavit of IRS Special Agent John Tschida): two search warrants for the separate Bloomington, Minnesota, residences of Nielsen

---

[6] Moreover, an offer of immunity differs from tactics of genuine coercion (such as threats, physical assault, etc.) in that a suspect's agreement to speak in exchange for immunity is often simply a consensual transaction entered into after deliberation. Freely agreeing to speak on such terms thus does not amount to succumbing to unfair techniques of genuine coercion.

[7] Although Balance has filed a post-hearing memorandum (Doc. No. 80) that purports to support his motion to suppress evidence obtained from a search and seizure (Doc. No. 49), the post-hearing memorandum argues that the Court should conduct a Franks hearing on the issue of whether the officer intentionally omitted relevant facts from the affidavit he provided in support of the search warrant at issue. Accordingly, the memorandum in fact supports Balance's separate motion for a Franks hearing (Doc. No. 74), which presents a non-dispositive issue that the Court has addressed in its Order dated September 15, 2008.

and his father, and a seizure warrant for a vehicle located at one of those Bloomington residences. Nielsen's present motion appears to challenge the Tschida affidavit supporting all three of the November 2007 warrants.

Nielsen contends that the warrants were "invalid under a limited four-corners analysis" because the information in the supporting affidavit "was stale and did not establish the requisite nexus between the alleged illegal activity and the residences to be searched." (Doc. No. 79.) With respect to staleness, Nielsen argues that the drug buys referenced in the affidavit occurred in November and December of 2003 and that the bulk of the information regarding Nielsen's "assets and financial transactions related to activities occurring in 2006," with the only event occurring later being the purchase of his vehicle license tabs in May 2007, still some six months before the warrant was issued. (Id.)

Of course, probable cause must "exist at the time of the search and not merely at some earlier time," but there is "'no fixed formula for determining when information has become stale.'" United States v. Kennedy, 427 F.3d 1136, 1141 (8th Cir. 2005).[8] The timeliness of information supporting probable cause "depends on the circumstances of the case, including the nature of the crime under investigation and the property sought in the search." Id. A "lapse of time is least important when the suspected criminal activity is continuing in nature and when the property is not likely to be destroyed or dissipated." United States v. Horn, 187 F.3d 781, 786 (8th Cir. 1999).

Weapons are the type of evidence that is likely to be kept over time and a weapons

---

[8] Defendant's reliance on Kennedy is misplaced insofar as he seeks to draw a factual analogy because the basis for affirming the suppression of evidence based on staleness was the finding that the informant provided no specific temporal reference for the information she supplied. Id. at 1141-42. Moreover, "Kennedy was not the subject of an ongoing narcotics investigation." Id. at 1142.

offense is continuing in nature. Id. An ongoing enterprise of drug trafficking is likewise a continuing offense. United States v. Formaro, 152 F.3d 768, 771 (8th Cir. 1998). Here, authorities were investigating whether Balance and Nielsen were engaged in an ongoing conspiracy to distribute marijuana. Thus, even a substantial lapse of time is far from fatal.

Moreover, Nielsen's present challenge largely ignores the bigger picture of the alleged ongoing criminal enterprise by focusing on particular events in isolation. Here, the affidavit details a drug trafficking and money laundering operation that extended back at least to 2003 and continued into 2007. Several cooperating witnesses provided detailed information that Balance and Nielsen were distributing large amounts of marijuana from 2003 well into 2006. (Gov't Ex. 5, ¶¶ 8-16.) In December 2006, the other warrant was executed at the Burnsville residence of Balance, resulting in the seizure of substantial amounts of marijuana and a firearm. (Id. ¶ 17.)

Agent Tschida's investigation also disclosed that since 2005 Nielsen purported to operate with Balance various businesses that generated substantial income, but that there were no actual profits from these businesses. (Id. ¶¶ 18-26.) Nevertheless, Nielsen paid cash (or by cashier's check) for several large purchases and deposited in his bank account large amounts of cash–although always in individual amounts of less than $10,000, the minimum for having to file a Currency Transaction Report–from 2005 through the first six months of 2007. (Id. ¶ 27.) At least one of these purchases was nominally conducted by Nielsen's father, even though his father lacked the savings and income to make such large purchases. (Id. ¶¶ 35-39.) Agent Tschida thus concluded that Nielsen was concealing his income from the alleged drug trafficking operation through the various "front" businesses Nielsen operated with Balance and through transactions conducted by Nielsen's father. (Id. ¶¶ 41-42.)

In short, although the last specific date of alleged criminal activity alleged in the affidavit

would appear to be the end of June 2007, several months before the warrants were sought in November 2007, the affidavit details a substantial criminal enterprise operating over at least the previous four years. Thus, the nature of the alleged ongoing criminal enterprises at issue negates the relevance of the gap of several months. United States v. Smith, 266 F.3d 902, 904-05 (8th Cir. 2001) (rejecting claim that evidence of drug transactions at house was three months old rendered it stale); see United States v. Formaro, 152 F.3d 768, 771 (8th Cir. 1998) (noting that for investigations of ongoing narcotics operations, intervals of weeks or months do not necessarily render the information stale). Cf. United States v. Abboud, 438 F.3d 554, 573 (6th Cir. 2006) (noting that gap of several years will not render information stale with respect to ongoing criminal activity such as drug trafficking). The Court further notes that there is no evidence suggesting that the suspects had terminated their illegal activities in the interim.

In addition, the nature of the evidence sought here also minimizes the importance of the lapse in time. The warrant authorized the search for and seizure of not only controlled substances and proceeds from the sale thereof, but also records and documents regarding Nielsen's employment, finances, businesses and residential premises. (Gov't Ex. 5.) With respect to the various documents sought, Agent Tschida expressly stated in his supporting affidavit that such records are property that, in fact, is often kept by those engaged in such activities. (Id. 5, ¶ 43.)

Nielsen also separately contends that the affidavit fails to establish the requisite nexus between the evidence sought and the residences that the warrant authorized to be searched. He claims that "there was not a fair probability that evidence of crime would be found at" those residences, because if he "were attempting to conceal his assets and illegitimate income, it would be logical to suspect that he would destroy financial documents indicating his attempt to conceal

assets and income." (Doc. No. 79.)

Probable cause requires only a "'fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Horn, 187 F.3d 781, 785 (8th Cir. 1999) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). A suspect's home and business are the most obvious and natural location for such materials to be likely located in the first instance. See generally 2 Wayne R. LaFave, Search and Seizure § 3.7(d), at 421-22 & nn.169-70 (4th ed. 2004). The requisite nexus between evidence of drug trafficking and a defendant's residence may be established based on the affiant's experience in such matters. E.g. United States v. Johnson, 437 F.3d 69, 71-72 (D.C. Cir. 2006). Such a nexus may even be inferred "by the nature of the item [sought] and the normal inferences of where one would likely keep such evidence." United States v. Anderson, 851 F.2d 727, 729 (4th Cir. 1988). Accord United States v. Grossman, 400 F.3d 212, 217 (4th Cir. 2005) (noting that nexus can exist even where supporting affidavit contains no factual assertions directly linking items sought to defendant's residence). This is particularly true where, as here, the residences at issue were the mailing addresses for the front businesses he operated as well as for his personal bank account statement. (Gov't Ex. 5, ¶¶ 19, 24, 27, 30-31, 40.)

Moreover, any such argument that whatever documents might have been sent to or otherwise stored at his residence no longer exist assumes that the suspect expected a search of those premises that could reveal such evidence and in fact succeeded in destroying all such material. But as Agent Tschida expressly stated in his supporting affidavit, even those engaging in criminal activity will often retain "items of evidentiary value because of their failure to understand the incriminating nature of certain innocuous appearing items, their inadvertence, or simply carelessness." (Id. ¶ 43(d).) Thus the Court cannot assume that such evidence would

likely not be found simply because a particular suspect would have destroyed it in anticipation of a search. Only a "fair probability" that something is likely located at a particular place is required to support probable cause. Horn, 187 F.3d at 785.[9]

With respect to O'Brien's motion, for which no supporting memorandum was filed, he generally contended only that the search of his "residence in Bloomington" violated his Fourth Amendment rights. (Doc. No. 65.) But it appears that O'Brien had no such residence in Bloomington. (The only Bloomington residences subject to searches here are those of Nielsen and his father.) The record indicates that O'Brien resided in St. Louis Park, but no search was conducted there. Although O'Brien was the nominal owner of the Burnsville property, he did not reside there as it was occupied by and paid for by Balance. Moreover, under these facts, it is far from clear O'Brien would have standing to challenge the search of the Burnsville property. Accordingly, O'Brien's motion, if not moot, should be denied. With respect to Balance's motion, the grounds for his argument appear confined to his request for a Franks hearing, an issue addressed elsewhere. (See supra notes 1 & 6.) In any event, the Court has conducted a four-corners review of the affidavit supporting the warrant but discerned no lack of probable cause.

### D. Eyewitness Identifications

Finally, Nielsen moves to suppress any eyewitness identifications of him. (Doc. No. 36.) The Government responds that it will not be offering any evidence at trial in the form of eyewitness identifications based on photographic line-ups. (Doc. No. 73.) Accordingly, the motion is moot.

---

[9] In light of this Court's rulings, there is no need to address Nielsen's argument that none of the Leon exceptions apply here.

### III. RECOMMENDATIONS

Based on the foregoing, and all the files, records and proceedings herein, IT IS HEREBY RECOMMENDED that:

1. Nielsen's Motion to Suppress Statements (Doc. No. 34) be DENIED AS MOOT;

2. Nielsen's Motion to Suppress Evidence Obtained as a Result of Illegal Searches (Doc. No. 35) be DENIED;

3. Nielsen's Motion to Suppress Any Identifications (Doc. No. 36) be DENIED AS MOOT;

4. Balance's Motions For Severance of Counts and Defendants (Doc. Nos. 48 & 71) be DENIED;

5. Balance's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 49) be DENIED;

6. Balance's Motion to Suppress Confessions and Statements in the Nature of Confessions (Doc. No. 70) be DENIED AS MOOT;

7. O'Brien's Motion to Suppress Search and Seizure of Evidence (Doc. No. 65) be DENIED;

8. O'Brien's Motion to Suppress Confession or Statements in the Nature of Confessions (Doc. No. 66) be DENIED.


Dated:  September 15, 2008

      s/ Susan Richard Nelson  
SUSAN RICHARD NELSON  
United States Magistrate Judge


Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by September 30, 2008, a writing which specifically identifies those portions of this Report to which objections are made and the basis of

those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.